**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**TVC ALBANY, INC. d/b/a TECH VALLEY
COMMUNICATIONS,**

                               **Plaintiff,**

    vs.                                               **1:12-CV-1471
(MAD/CRH)**

**AMERICAN ENERGY CARE, INC. and
JAIME THOMPSON, Individually,**

                               **Defendants.**
_____

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**TVC ALBANY, INC. d/b/a TECH VALLEY
COMMUNICATIONS,**

                               **Plaintiff,**

    vs.                                               **1:12-CV-1472
(MAD/CRH)**

**NOE STREET, LLC d/b/a BEST CLEANERS,
TIMOTHY MCCANN, Individually, and
CATHERINE MCCANN, Individually,**

                               **Defendants.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| TVC ALBANY, INC.<br>87 State Street<br>Albany, New York 12207<br>_Attorney for Plaintiff_ | Carolyn K. Cole, Esq. |
| LEMERY GREISLER, LLC.<br><br>60 Railroad Place<br>Suite 502<br>Saratoga Springs, New York 12866<br>_Attorney for Defendants_ | Robert A. Lippman,<br>Esq. |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## INTRODUCTION

Plaintiff TVC Albany, Inc. d/b/a Tech Valley Communications ("TVC") commenced the within action for monetary damages and injunctive relief asserting claims under the Filed Rate Doctrine and causes of action for breach of contract/agreement, defamation, tortious interference with contractual relationships, fraud, deceit and misrepresentation. (Dkt. No. 6). Plaintiff's claims arise from interstate and international telecommunications services TVC provided to defendants based on contract, federal and state law. The above-captioned cases have been designated as related cases by the Clerk of the Court. Presently before the Court is plaintiff's motion for a preliminary injunction pursuant to Fed. R. Civ. P. 65 to restrain/prohibit defendants from disparaging or defaming plaintiff or engaging in publication of false and malicious information to the public or press regarding plaintiff. Plaintiff moves for a preliminary injunction in both actions. (Dkt. No. 7). Defendants have opposed the motion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

TVC provides local exchange telephone services as a Competitive Local Exchange Carrier. TVC is also an Interchange Telecommunications Carrier ("IXC") which provides toll services in New York State. TVC provides toll (interstate and international) services to customers who are pre-subscribed to TVC's long-distance service. Long-distance calls dialed by pre-subscribed customers, or which originate on the facilities of pre-subscribed customers, are automatically routed to TVC's toll network. TVC also permits "casual use" callers to access TVC's network to make interstate and international calls by dialing the TVC access code from

---

[1] The facts are taken from the Amended Complaints, affidavits and exhibits submitted by the parties. These are not findings of fact by the Court and are only presumed true for the purposes of the within motion.

any landline telephone. A "causal use" customer utilizes TVC's services through interconnection with another local exchange company. The cost of the interstate or international call is then billed to the owner of the telephone line from where the call was made and the user of the line is deemed a customer of TVC responsible for the charges associated with "casual use" calls. Interstate and international telephone services are subject to the rules of the Federal Communications Commission ("FCC"). TVC has made all of its rates, terms, and conditions regarding the use of its network available on its website.

Kevin O'Connor is the Chief Executive Officer of TVC. Defendant American Energy, Inc. ("American Energy") is a pre-subscribed customer of TVC's long distance services. Defendant Jaime Thompson[2] ("Thompson") is the president of American Energy. Defendant Noe Street LLC d/b/a Best Cleaners ("Best Cleaners") is a casual-use caller. Defendant Tim McCann ("T. McCann") is the president of Best Cleaners. Defendant Catherine McCann ("C. McCann") is an agent of Best Cleaners.

TVC claims that American Energy and Best Cleaners installed their own telephone equipment on their premises and that TVC did not select or recommend such equipment. Plaintiff claims that the equipment may have the capability to allow calls to be originated from remote locations, routed through such equipment, and connected to TVC's toll service in the same manner as a call that originated from American Energy or Best Cleaner's premises. This arrangement, commonly known as "remote calling or remote PBX access" could allow a third person to have toll calls appear to originate on American Energy or Best Cleaner's terminal equipment.

---

[2] In some court documents, defendant is referred to as "Jaime Thompson" and in other documents, he is referred to as "Jamie Thompson". Throughout this decision, the Court will utilize the name as set forth in the caption of the Amended Complaint.

TVC published the following items on their website: (1) TVC's Terms and Conditions for Interstate Toll Message Telecommunications Services; (2) TVC's International Long-Distance Service Guide; and (3) TVC's tariff, filed with the New York Public Service Commission ("P.S.C.").

On November 4, 2009, Thompson executed a written contract with TVC for local, interstate and international long-distance telephone and Internet services at American Energy's offices at 401 New Karner Road, Albany, New York. The term of the contract was 36 months. On November 4, 2009, Thompson executed a Change of Authorization with listed the "Area of Service" as "US".

On January 8, 2012, TVC's Chief Information Officer, James Reynolds ("Reynolds"), requested that TVC suspend American Energy's ability to make international calls based upon his suspicion of fraudulent activity. Due to the fact that January 8, 2012 was a Sunday, Reynolds suspended service without first notifying American Energy. On January 10, 2012, Reynolds claims that TVC notified American Energy that possible unauthorized calls were occurring and advised American Energy to take certain precautions in the event that such calls were unauthorized. Conversely, Thompson claims that American Energy discovered that it's telephone system had been compromised on January 10, 2012 and immediately contacted plaintiff.[3]

TVC invoiced American Energy for interstate and international calls placed during the first week of January 2012 which originated on telephone lines belonging to American Energy in the amount of $200,353.50.[4] Thompson claims that American Energy was billed for 94,000 minutes of phone calls and that American Energy's normal usage was less than sixty minutes per

---

[3] The record does not indicate who Thompson spoke with regarding the issue.

[4] The invoice are not part of the record herein.

4

month and that American Energy never dialed outside of the United States or Canada. American Energy reported the incident to the New York State Police and Thompson claims that Lieutenant Mark A. Brown of the Computer Crime Unit conducted an investigation.[5]

Best Cleaners is not a TVC customer. C. McCann claims that Best Cleaners had no need for international calling services and took security precautions and implemented passwords and access codes. C. McCann claims that all calls to destinations out side of the United States, with the exception of calls to Europe and Canada, were blocked.

TVC claims that it notified Best Cleaners that possible unauthorized calls were occurring and advised Best Cleaners to take certain precautions in the event that such calls were unauthorized.[6] TVC claims that Best did not respond to the notification. The calls were received over the lines used by Best Cleaners to access TVC's services. TVC invoiced Best Cleaners for interstate and international long-distance calls placed during the first week of January 2012 which originated on telephone lines belonging to Best Cleaners. The calls were placed on a "casual use" basis and amounted to $146,921.29 in long-distance telephone charges.[7] C. McCann claims that on January 18, 2012, Reynolds advised that TVC's PBX had been accessed to make calls to South Africa and that Best would be responsible for the "astronomical bill". Reynolds denies that such a conversation took place. On April 4, 2012, Best Cleaner's counsel, Robert A. Lippman ("Lippman") sent a letter to plaintiff's counsel, Carolyn Cole ("Cole") regarding the January 2012 invoice. The letter indicates that the calls were made from telephone numbers that Best does not own.

---

[5] There is no police report or affidavit/statement from Lt. Brown in the record.

[6] The record does not contain any evidence of the notification including when it was sent to Best or by whom.

[7] The invoice is not part of the record herein.

On September 25, 2012, plaintiff commenced the within actions. On September 28, 2012, the Albany Times Union published an article in the Business Section entitled, "The issue in hacking case: Who is liable". T. McCann and Thompson claim that they were approached by business people within the community and members of the Albany Entrepreneurs Organization ("EO") asking how they could assist Best and American Energy. C. McCann contacted the Women Presidents Organization ("WPO") for similar support.

After the within actions were commenced, Thompson, T. McCann and C. McCann called TVC's offices to discuss a possible settlement.[8] TVC agreed to discuss a settlement on the condition that American Energy and Best Cleaners signed a non-disclosure and non-disparagement agreement (the "Agreement"). On October 15, 2012, Thompson, T. McCann and C. McCann went to TVC's offices. Thompson signed the Agreement on behalf of American Energy and C. McCann signed the Agreement on behalf of Best Cleaners. The Agreement stated, in relevant part:

> Neither party shall disclose any Confidential Information it receives during the settlement discussion to any other person, firm, or corporation associated or otherwise, or use the Confidential Information for that party's own benefit, except for the purposes described above, without the prior written consent of the other party.
>
> Indemnification and Injunctive Relief. The parties acknowledge that a breach of the terms of this Agreement will be wrongful and may cause irreparable injury. Therefore, in addition to all remedies of law and equity, each party shall be entitled, as a matter of right, to injunctive relief enjoining and restraining the other party and each and every other person or entity concerned thereby from continuing to act (or failing to act) in violation of the terms hereof. Any party held to be in breach of this Agreement by a court issuing injunctive relief shall be liable for any direct damages resulting from any breach of the Agreement and attorneys' fees and costs.

---

[8] The record does not indicate when this telephone conversation took place or who, at TVC, spoke with defendants.

6

> Publicity. Except as permitted hereunder, neither party shall make any press release or other disclosure of any kind regarding this Agreement, any discussions or negotiations relating thereto, or the Confidential Information without the prior written consent of the other party.
>
> Non-disparagement. Neither party, including its employees, officers, directors, affiliates, agents and/or representatives shall disparage the other party, its business, its agents, or its principles in any manner, either orally or in writing, including, but not limited to, statements to the print media or social media, such as Facebook, LinkedIn, or Twitter and further agree to make no statements to third parties which could defame the reputation of either party, its business, agents, or principles. Disparagement shall not include discussion of the nature of the lawsuit, defenses and affirmative defenses, claims and matters of public policy.

The McCann's sought to join Thompson in a collective settlement discussion but TVC desired to keep the meetings separate. The parties met with Sean Socha, TVC's Chief Financial Officer, and discussed settlement, without success. Following the discussions, the group reconvened. Thompson then produced an "Open Letter" signed by 37 members of the Albany business community. The letter states the following:

> <u>An open letter to Tech Valley Communications</u>:
>
> We have recently learned that hackers exploited the Tech Valley Communication (TVC) network to run up hundreds of thousands of dollars (or more) in long distance charges to various local small businesses, some of whom were not even customers of TVC. While it is unclear to many of us how such hacking works, it seems reasonably clear that TVC lacked the detection capabilities to identify this type of fraud, which allowed it to continue to both their customers and non-customers lines. This apparently exposed our entire business community to significant harm, and continues to do so.
>
> Our understanding is that other telecommunications vendors in the area employ the necessary fraud detection capabilities to protect our community from these types of events, and when such fraud does occur, these vendors have relieved the customers from any responsibility. Accordingly, we were appalled to learn that TVC has filed suit against several of these local companies in an effort to collect several hundred thousand dollars in long distance charges on the TVC network that was clearly a result of fraudulent activity.

> As local business and community leaders, our preference is to always seek out and support vendors and service providers that have a stake in this region. In return, we expect and hope that such companies, like TVC, will try to take the high road when dealing with organizations in our community. For better or worse, this often means biting the bullet to do the right thing.
>
> We as business and community stakeholders are therefore looking to TVC to demonstrate itself as a leader, and drop the ongoing law suits along with any collection effort, and do what is right to protect and uphold the integrity of our community now and into the future.

The parties present drastically different "facts" with respect to who prepared the letter and who distributed letter.[9] C. McCann asserts that "[v]arious members of the WPO reached out to me and asked how they could help. It was during this time that the idea of an open letter came out of the Albany chapter of the Entrepreneurs Organization". Defendants allege that "business people collaborated" in formulating the Open Letter. Thompson contends that the letter was distributed by others to members of the Albany Chapter of the Entrepreneurs Organization. On October 14, 2012, C. McCann sent an email to the WPO with the open letter requesting support with electronic signatures. Defendants claim that the EO and WPO provided the signed Open Letter to Thompson to present to TVC. Thompson states that he delivered the letter to TVC personally to ensure confidentiality. Conversely, plaintiff claims that Thompson, T. McCann and C. McCann and "others" prepared the Open Letter and delivered the letter to dozens of members of the Albany business community who are existing or prospective TVC customers.[10]

On October 23, 2012, plaintiff filed Amended Complaints and Orders to Show Cause seeking temporary restraining orders and preliminary injunctions. Plaintiff claims that defendants threatened to publish, disseminate, and communicate false and disparaging information about

---

[9] The copy of the Open Letter in the record is signed by Andrew James of Rensselaer Honda.

[10] The record does not indicate who authored the letter or who "personally delivered" the letter in the community.

8

TVC to the Albany business community unless plaintiff abandons the within lawsuits. Accordingly, plaintiff seeks a preliminary injunction prohibiting defendants from publishing or disseminating disparaging information to third parties, including the press. On October 26, 2012, the Court denied the requests for temporary restraining orders but established an expedited briefing schedule for plaintiff's motion for preliminary injunctions.[11] (Dkt. No. 11).

## DISCUSSION

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (citation omitted). Furthermore, "[a] decision to grant or deny a preliminary injunction is committed to the discretion of the district court." *Polymer Tech. Corp. v. Mimran*, 37 F.3d 74, 78 (2d Cir. 1994) (citation omitted). In most cases, the party seeking the injunction must show a threat of irreparable injury if the injunction is not granted and either: (1) a probability of success on the merits; or (2) sufficiently serious questions going to the merits of the claims to make them a fair ground of litigation, and a balance of hardships tipping decidedly in favor of the moving party. *See Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996) (internal quotes omitted). "[C]ourts may no longer simply presume irreparable harm; rather, plaintiffs must demonstrate that, on the facts of the case, the failure to issue an injunction would actually cause irreparable harm. *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012) (citation omitted). "Courts must pay 'particular attention to whether the remedies available at law, such as monetary damages, are inadequate to compensate for [the] injury.'" *Id.* (citation omitted).

---

[11] Originally, the Court directed the parties to appear for oral argument. However, upon receipt of submissions from the parties, the Court determined that oral argument was not necessary. The Court will resolve the motion on the submissions. *See Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 984 (2d Cir. 1997).

9

In this matter, plaintiff seeks to enjoin defendants from "disparaging or defaming" plaintiff. A request for a prior restraint of speech and publication is the "least tolerable infringement" on First Amendment rights and subject to "a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963); *accord Org. for a Better Austin v. Keefe*, 402 U.S. 415, 418 (1971); *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976)[12]. Injunctions of this nature are widely disfavored, thus, plaintiff bears a heavy burden of showing that a prior restraint is necessary. *See Keefe*, 402 U.S. at 418. "[F]or almost a century, the Second Circuit has subscribed to the majority view that injunctions should not ordinarily be issued in defamation cases." *Metro. Opera Ass'n v. Local 100, Hotel Emp. & Rest. Emp. Int'l Union*, 239 F.3d 172, 177 (2d Cir. 2001). The First Amendment may prohibit granting an injunction even in the presence of "extraordinary circumstances" such as intimidation and coercion. *Id*. "Prior restraints of future speech are particularly dangerous because of the difficulty courts face in designing an order that does not chill protected speech." *Bihari v. Gross*, 119 F.Supp.2d 309, 325 (S.D.N.Y. 2000) (citing *inter alia Latino Officers Ass'n, New York, Inc. v. City of New York*, 196 F.3d 458, 465 (2d Cir. 1999)).

"Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction". *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233 -234 (2d

---

[12] In *Stuart*, the Supreme Court held:

> A criminal penalty or a judgment in a defamation case is subject to the whole panoply of protections afforded by deferring the impact of the judgment until all avenues of appellate review have been exhausted. Only after judgment has become final, correct or otherwise, does the law's sanction become fully operative.
>
> A prior restraint, by contrast and by definition, has an immediate and irreversible sanction. If it can be said that a threat of criminal or civil sanctions after publication "chills" speech, prior restraint "freezes" it at least for the time.

*Stuart*, 427 U.S. at 559.

10

Cir. 1999) (internal quotations omitted). Before the Court engages in a discussion of whether plaintiff is likely to succeed on the merits of its various claims including breach of contract, defamation, tortious interference and breach of the Agreement, the Court must first determine whether plaintiff has sufficiently established that it will suffer imminent irreparable harm, not compensable with monetary damages, to warrant a preliminary injunction. *See Town of Riverhead v. CSC Acquisition-NY, Inc. (Cablevision)*, 618 F.Supp.2d 256, 264 (E.D.N.Y. 2009).

The Second Circuit has recognized that damage to one's business reputation and loss of customer goodwill can constitute irreparable harm. *Xelus, Inc. v. Servigistics, Inc*., 371 F.Supp.2d 387, 390 (W.D.N.Y. 2005) (citing *Register.Com, Inc. v. Verio, Inc*., 356 F.3d 393, 404 (2d Cir. 2004)); *see also Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69-70 (2d Cir.1999) (it is "very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come"). Nevertheless, "[t]he fact that [] false statements may injure the plaintiff in his business or as to his property does not alone constitute a sufficient ground for issuance of an injunction." *Bynog v. SL Green Realty Corp*., 2005 WL 3497821, at *3 (S.D.N.Y. 2005) (citing *inter alia, Donini Int'l, S.P.A. v. Satec (U.S.A.) LLC*, 2004 WL 1574645, at *7 (S.D.N.Y. 2004) ("[T]he long-standing rule in this Circuit is that equity will not enjoin threatened libel or defamation since there are adequate legal remedies available for damages arising from harmful speech")). While damages for these loss are difficult to compute, there must be some evidence that they are likely to occur. *Astronics Corp. v. Patecell*, 1986 WL 11889, at *3 (W.D.N.Y. 1986). Where plaintiffs have an adequate remedy at law, injunctive relief is unnecessary. *See id.*; *see also Ameritech v. Voices For Choices, Inc*., 2003 WL 21078026, at *2 (C.D. Ill. 2003) (injuries to business, reputation and

good will are all amenable to pecuniary valuation and can be adequately compensated with monetary damages).

In this case, upon a review of the record, the Court finds that plaintiff has not demonstrated the likelihood of irreparable harm necessary to warrant the nature of relief sought herein, specifically, an order restraining defendants' future speech. Plaintiff has failed to demonstrate that it has sustained actual injury or that injury is imminent. Plaintiff offers only broad allegations concerning its potential loss of reputation and good will. In his affidavit in support of the motion, Kevin O'Connor avers:

> Since the publishing of these false and defamatory statements, numerous TVC customers have contacted TVC alarmed over the false perception that TVC's facilities are not secure.
>
> As a result of the distribution and publication of this false communication, TVC may be faced with damages due to customer ill will, loss of business reputation and loss of revenues and profits.

O'Connor Aff. at ¶ 18, 19.

Similarly, Sean Socha, TVC's Chief Financial Officer, states:

> Since the publishing of these false and defamatory statements, numerous TVC customers have contacted TVC alarmed over the false perception that TVC's facilities are not secure.

Socha Aff. at ¶ 13.

O'Connor and Socha claim only that it is <u>possible</u> that TVC will face damages due to ill will, loss of business or reputation. TVC's assertions are based upon speculation and assumption and are wholly conclusory in nature. Plaintiff does not assert that it actually lost sales or business as a result of defendants' actions. Plaintiff failed to identify which customer(s) contacted plaintiff or the number of customers who contacted TVC regarding TVC's facilities or security. Plaintiff has not demonstrated, or even alleged, that the aforementioned customers contacted TVC based

12

upon their knowledge of or review of the Open Letter. Indeed, as noted *supra,* the media and news outlets published articles regarding the substantive issues herein. The fact that the customers were "alarmed" does not translate to a loss of goodwill or reputation. *See Astronics Corp.*, 1986 WL 11889, at \*3 (all that is noted in the plaintiff's affidavit is that he had received inquiries from one client and that another client had indicated that the defendants' claims did not reflect favorably on the plaintiff); *see also Bynog*, 2005 WL 3497821, at \*4 (the defendants did not submit any evidence that the plaintiff influenced the defendant's tenants to break or fail to renew leases). Plaintiff has failed to produce any evidence that any customer terminated its contract or any evidence that TVC lost business from any potential customer. There is no evidence of any negative effect on plaintiff's reputation or goodwill. *Cf. Xelus*, 371 F.Supp.2d at 390 (the plaintiff produced evidence of disparaging emails from Servigistics to the plaintiff's business partner Oracle, with Oracle responding that, "we need to understand and reevaluate our options").

Plaintiff has also failed to establish that monetary damages would not provide adequate relief. Plaintiff has not come forward with any evidence that defendants are insolvent or would otherwise be unable to satisfy a monetary judgment. *See Gaming Mktg. Solutions, Inc. v. Cross*, 2008 WL 858183, at \*6 (S.D.N.Y. 2008); *see also Bynog*, 2005 WL 3497821, at \*4. Any future loss of profit is quantifiable and thus, does not mandate injunctive relief. *See Jessup v. Am. Kennel Club, Inc.*, 862 F.Supp. 1122, 1128 (S.D.N.Y. 1994). "The fact that defendants' statements about plaintiff's business may injure plaintiff does not alone constitute sufficient ground for an issuance of an injunction because plaintiff has an adequate remedy at law". *Freedom Calls Found. v. Bukstel*, 2006 WL 845509, at \*22 (E.D.N.Y. 2006) (citations omitted).

Plaintiff argues that defendants "threatened to publish defamatory information unless TVC abandons its lawsuit". The Court has reviewed the cases cited by plaintiff in support of the argument that "a threat to the existence of a business constitutes irreparable injury to justify relief". The cases cited are factually inapposite from the matter at hand. Moreover, plaintiff has not established that there is an imminent threat to TVC's business as a whole. *See Jessup*, 862 F.Supp. at 1128. "The law requires that the injury to a business necessary to support a grant of a preliminary injunction must be damage to the business as a whole (as opposed to a temporary or partial disruption) and that damage must be immediate." *GPA Inc. v. Liggett Group, Inc*., 862 F.Supp. 1062, 1069 (S.D.N.Y. 1994). Here, plaintiff has failed to present such evidence of significant losses to justify a preliminary injuction.

Plaintiff also asserts that injunctive relief is warranted based upon the Non-Disclosure Agreement. Plaintiff has not provided any caselaw in support of that assertion. The record, as it presently exists, contains insufficient evidence to establish that plaintiff is likely to succeed on the merits of the cause of action for breach of the Agreement. The agreement specifically excludes the discussion of the nature of the lawsuit, defenses and affirmative defenses, claims and matters of public policy from the scope of the agreement. Plaintiff claims that it only seeks to prohibit defendants from "further publication of verifiably false information". Plaintiff's interpretation of the scope of the NDA does not support a preliminary injunction based upon the claim for breach of the NDA. *See TES Franchising, LLC v. Dombach*, 2010 WL 3946274, at *8 (E.D. Pa. 2010). Moreover, while the parties agreed that a breach of the terms of the Agreement may cause irreparable injury, this provision lends support to a finding of irreparable harm, but is not dispositive of the issue. *Contour Design, Inc. v. Chance Mold Steel Co., Ltd.*, 2010 WL 4774283, at *11 (D.N.H. 2010) (citing *Baker's Aid, Div. of M. Raubvogel Co. v. Hussman*

*Foodservice Co.*, 830 F.2d 13, 16 (2d Cir. 1987)).  In this case, as discussed previously, plaintiff has failed to submit any evidence demonstrating irreparable harm.

Because plaintiff has failed to establish irreparable harm, the Court need not address the issue of likelihood of success on the merits. *See Town of Riverhead*, 618 F.Supp.2d at 264; *see also Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 68 (2d Cir. 2007) ("The finding of no showing of irreparable harm is dispositive").  Plaintiff's motion for a preliminary injunction is hereby denied.  However, the Court will order an expedited discovery schedule to alleviate any delay in deciding the merits of this case.  *See Jordan v. Metro. Life Ins. Co.*, 280 F.Supp.2d 104 (S.D.N.Y. 2003).

## CONCLUSION

**It is hereby**

**ORDERED**, that plaintiff's motions for a preliminary injunction (12-CV-1471, Dkt. No. 7 and 12-CV-1471, Dkt. No. 7) are **DENIED**, it is further

**ORDERED**, that these matters are referred to the United States Magistrate Judge Christian F. Hummel for an expedited discovery schedule.

**IT IS SO ORDERED.**

Dated: November 16, 2012
       Albany, New York

Mae A. D'Agostino
U.S. District Judge